### SMITH v. CITY OF SYRACUSE et al.

(Supreme Court, Appellate Division, Fourth Department.    April 10, 1897.)

1. MUNICIPAL CORPORATIONS — PAVING CONTRACTS — PETITION OF PROPERTY OWNERS.

Syracuse City Charter (Laws 1885, c. 26) § 141, as amended by Laws 1893, c. 531, provides that a person who has petitioned for a local improvement shall not within three months thereafter revoke his petition, withdraw his name, or become a remonstrant. *Held*, that a person who had petitioned for the paving of a street with brick could not within three months thereafter petition for the paving of the same street with asphalt, and any action taken by the city council on the second petition was void.

2. SAME—SPECIFICATIONS—TIME OF FILING.

The provision of Syracuse City Charter (Laws 1885, c. 26) § 156, as amended by Laws 1889, c. 475, that public improvements shall be made in accordance with specifications prepared by the city engineer, requires such specifications to be filed a reasonable time before bids will be received, so as to secure free competition among bidders.

3. STATUTES—LEGISLATIVE INTERPRETATION.

A statute declaring the meaning of a former statute does not affect the power of the courts to interpret such former statute, as to causes of action existing before the later statute was enacted.

4. MUNICIPAL CORPORATIONS—PUBLIC IMPROVEMENTS—SPECIFICATION OF MATERIALS.

A proceeding to pave a street is not void because the petition of the property owners and the determination of the council provided that the work should be done with bricks made by a specified manufacturer, there being no evidence that such bricks were made under a patent, or were not generally for sale in the market.

Ward, J., dissenting.

Appeal from special term, Onondaga county.

Action by William Brown Smith against the city of Syracuse and the Syracuse Improvement Company, impleaded with others. From a judgment dismissing the complaint without costs, entered on a decision separately stating the facts found from the conclusions of law, plaintiff appeals. Reversed.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

William S. Andrews, for appellant.

Charles E. Ide, for respondent city of Syracuse.

William Nottingham, for respondent Syracuse Improvement Co.

FOLLETT, J.    This action was begun December 14, 1894, by a taxpayer, to restrain the city and its officials from entering into a contract with the Syracuse Improvement Company for paving Liberty street from Park avenue to West Genesee street with asphalt. The city of Syracuse and the Syracuse Improvement Company answered separately, but the individual defendants have not answered.    The decision of this case depends on the construction which should be given to the following sections of title 9 of the charter of the city of Syracuse (chapter 26 of the Laws of 1885, as amended by chapter 449 of the Laws of 1888, chapter 475 of the Laws of 1889, and chapter 531 of the Laws of 1893):

"Sec. 139 [as amended by chapter 531, Laws 1893]. Before any local improvement shall be undertaken, except for the construction, repair or reconstruc-

tion of sidewalks, it shall be necessary for the owners of at least one-third of the total number of front feet, lineal measurement, or at least one-third in number of the owners of the property on the street or part of a street in or upon which the proposed improvement is to be made, to petition, request or consent, in writing, for the making thereof. Upon the receipt of any such petition, request or consent for any local improvement, the common council, if it shall determine to make the improvement asked for, shall cause a printed or written notice of the proposed improvement to be served on the persons owning property fronting upon the street or part of a street in or upon which such improvement is proposed to be made. * * *

"Sec. 140. Such notices shall be served at least ten days before the improvement shall be ordered by the common council, and shall specify the time within which any person interested may object to such improvement, which time shall not expire sooner than the next regular meeting of the common council, and that in case no objection is made within the time specified, all persons interested will be deemed to have·acquiesced in the proposed improvement. Such objection must be made in writing, delivered to the city clerk. If no objection be made, the common council may, at any regular meeting within two months after the expiration of such ten days, by a majority vote, subject to the mayor's veto, as in other cases, order the improvement to be made; but if any such objection be made within the time specified, the improvement shall not be ordered except by the vote of two-thirds of all the members of said common council.

"Sec. 141 [as amended by chapter 531, Laws 1893]. Before the common council shall direct the service of the notices aforesaid, it shall be the duty of the assessors, or a majority thereof, to examine such petition or consent and certify that the number of owners required by section one hundred and thirty-nine have signed the same, which certificate shall be indorsed upon said petition and shall be final and conclusive evidence of that fact. No person signing a petition, request or consent shall be counted or considered upon a remonstrance against the improvement petitioned for, requested or consented to by him; nor be permitted to withdraw his name from such petition, or revoke such request or consent, within three months after the presentation of such petition, request or consent to the common council."

"Sec. 155 [as amended by chapter 449, Laws 1888]. Whenever the common council shall order any work done or materials or supplies to be furnished, under the provisions of the foregoing sections of this title, the same shall be done by contract if it shall involve an expenditure exceeding seventy-five dollars, and such contract shall be let to the lowest bidder. * * * When the lowest bid in the opinion of the common council is too high, they shall have the right to reject it, and may then by resolution discontinue or abandon the work, or they may direct the clerk to advertise for new proposals.

"Sec. 156 [as amended by chapter 475, Laws 1889]. All work done under the provision of the foregoing sections of this title shall be done under the direction of the commissioner of public works, and in accordance with the plans, specifications and estimates prepared by the city engineer, unless otherwise specially ordered.

"Sec. 157. Whenever directed by the common council the clerk shall advertise for proposals for such length of time as the.council shall direct, not less than five days. * * * The proposals shall be such in form as the council·shall prescribe."

On the 15th of August, 1894, four property owners petitioned the· common council—

"To order the paving of Liberty street from Park avenue to West Genesee· street with vitrified paving brick, manufactured by the New York Brick & Paving Company, of Syracuse, N. Y.; the maintenance of said pavement to be· guarantied for a period of five (5) years from its completion. The width of the roadway, not to exceed twenty-five (25) feet between curbs."

September 10, 1894, the same persons petitioned the common· council—

"To order the paving of Liberty street from West Genesee street to Park avenue with Trinidad asphalt sheet pavement; and the maintenance of said pavement to be guarantied for a period of five (5) years from the time of its completion without further costs to the city or property owners."

The petition for paving Liberty street with vitrified paving brick was referred to the highway committee, by which it was reported favorably on the 4th of September, 1894; and on September 10, 1894, the common council passed the following resolution:

"Resolved, that the report of the highway committee on the petition of John Zinsmeister and others, for the paving of Liberty street from Park avenue to West Genesee street with vitrified paving brick manufactured by the New York Brick & Paving Company, of Syracuse, N. Y., the maintenance of said pavement to be guarantied for a period of five years from its completion, be taken from the table, and that the same be and is hereby adopted; and the clerk is directed hereby to serve the proper notices."

September 12, 1894, a written notice was duly given to the property owners that the common council had determined to pave Liberty street with vitrified brick, as specified in the petition and in the resolution. September 17, 1894, the common council adopted a resolution directing that the clerk advertise five days for proposals for furnishing materials to pave Liberty street with vitrified paving brick manufactured by the New York Brick & Paving Company, of Syracuse, N. Y. October 2, 1894, it was advertised that sealed proposals would be received until October 8, 1894, at 3 p. m., for paving Liberty street with vitrified paving brick. No proposals were received under this advertisement, for the reason that the plans and specifications had not been prepared by the engineer. October 23d the clerk advertised that sealed proposals for paving Liberty street with vitrified paving brick would be received until October 29, 1894, at 3 p. m. The petition of September 10, 1894, for paving Liberty street with Trinidad asphalt sheet pavement, was referred to the highway committee, which reported favorably September 17, 1894; and on the 24th of September, 1894, the common council passed the following resolution:

"Resolved, that the report of the highway committee on the petition of Herman Burtels and others for the paving of Liberty street from West Genesee street to Park avenue with Trinidad asphalt sheet pavement, and the maintenance of said pavement for a period of five years from the time of its completion without further cost to the city or property owners, be taken from the table, and that the same be, and is hereby, adopted; and the clerk is hereby directed to serve the proper notices."

On the 26th of September, 1894, written notice was duly given to the property owners that the common council had determined to pave Liberty street with Trinidad asphalt sheet pavement, as specified in the petition for paving with asphalt and in the last-mentioned resolution. October 1st the clerk was directed to advertise five days for proposals for furnishing materials to pave Liberty street with Trinidad asphalt sheet pavement, in pursuance of which it was advertised that proposals would be received for such pavement until October 8, 1894, at 3 p. m. The specifications not having been prepared by the city engineer, the clerk again advertised, on October 23d, that proposals for paving Liberty street with Trinidad asphalt sheet pavement would be received until October 29, 1894,

at 3 p. m. The specifications for paving the street with either kind of material were not prepared and filed by the engineer until October 25, 1894. On the 29th of October, 1894, the following two proposals were received for paving Liberty street with Trinidad asphalt sheet pavement:

Warren-Scharf Asphalt Paving Company...................... $6,422 30
Syracuse Improvement Company .......................... 5,851 80

The following four proposals were received on the same day for paving the street with vitrified paving brick manufactured by the New York Brick & Paving Company, of Syracuse, N. Y.:

Andrew F. West ........................................... $5,170 00
Homer & Co................................................ 5,194 80
G. D. Grannis ............................................ 5,167 70
L. D. Hulburt ............................................ 4,715 80

On November 19, 1894, the following resolution was unanimously adopted by the common council, 15 aldermen being present, which was signed by the mayor:

"Whereas, this common council hereby designates Trinidad asphalt sheet pavement as the material with which to pave Liberty street from West Genesee street to Park avenue: Now, therefore, resolved, that the mayor and clerk be, and they are hereby, authorized and directed to enter into contract with the Syracuse Improvement Company for furnishing materials and paving Liberty street from West Genesee street to Park avenue with Trinidad asphalt sheet pavement, and the maintenance of said pavement for a period of five years from the time of its completion without further cost to the city or property owners, in accordance with their proposal submitted to this council October 29, 1894."

The bid of the Syracuse Improvement Company was the lowest for paving with Trinidad asphalt sheet pavement, but was higher than any one of the four bids for paving with vitrified paving brick. Immediately after the adoption of this resolution, this action was begun, and no contract has been entered into in behalf of the city for paving the street.

It is not, and it cannot be successfully, denied that the two central ideas embraced in the sections quoted are (1) to give to owners of property who are to be assessed for local improvements a voice in determining whether they shall be made; (2) to secure publicity in respect to the particulars of the improvement ordered, and invite competitive proposals for the construction of the work, and thus secure it to be done for the best attainable price. The sections should be construed so as to accomplish these results, if it can be done without violating the language of the statutes. The four persons who petitioned August 15, 1894, that Liberty street be paved with vitrified brick, on the 10th of September, 1894 (no other persons joining with them), petitioned that the street should be paved with Trinidad asphalt. These pavements are totally unlike, and the street could not be paved with both. Section 141 provides that a petitioner shall not, within three months after petitioning, revoke his petition, withdraw his name, nor become a remonstrant. Under this provision, the four persons who petitioned September 10, 1894, for paving the street with vitrified brick could not within 26 days become petitioners for an entirely different kind of pavement

in the same street.   The second scheme under which the work was let was not initiated by competent petitioners, and the action of the common council on the second petition was without jurisdiction, and is void.   These sections were designed to secure free and fair competition among bidders for the construction of such improvements as shall be ordered in the city of Syracuse.   It is true that section 157 permits the work to be let after advertising five days for proposals, which, perhaps, is a provision not likely to permit much competition among bidders who do not reside in the city.   It is apparent that intelligent bids cannot be made, by persons honestly intending fairly to do the work, without an opportunity of inspecting the plans and specifications, and learning precisely what kind of work is required, and its details.   In no other way can the result be accomplished.   A just interpretation of the section requires that the plans and specifications shall be filed before proposals for doing the work are advertised for, so as to give a reasonable opportunity to bidders to judge of the probable cost of the work.   If the time of filing the plans and specifications is wholly discretionary, they may be filed an hour before the bids are to be opened, or, as in this case, four days before the time limited for the reception of bids. The requirements of the section in this respect were not complied with, under either scheme, and the common council had no legal right to let the work so advertised.   By chapter 950 of the Laws of 1895, section 155 of the charter hereinbefore quoted was amended, among other things, by the addition of this provision:

"The foregoing provisions of this section shall be construed to authorize and empower the common council to receive bids for doing a particular piece of work with different kinds of material and under different plans and specifications, and, in cases where the proposed improvement is the paving of a street, avenue, square, alley, or public place, with different kinds of pavement; and after the receipt of the bids, to designate the material, and, in cases of paving, the kind of pavement to be used, and the plans and specifications pursuant to which the work shall be done; and to authorize the letting of the contract to the lowest bidder for doing the work with the material, and under the plans and specifications, or, in cases of paving, with the pavement so designated; and any improvement heretofore let under the provisions of this title, and in accordance with the foregoing construction of this section, shall be deemed and hereby is declared to have been let legally and in compliance with the provisions of this section."

Section 156 was amended by chapter 950 of the Laws of 1895 by adding the following provision:

"Where proposals shall be advertised for in accordance with plans and specifications of the city engineer, the preparation of such plans and specifications by said engineer a sufficient length of time before the letting to enable intending bidders to prepare and submit their bids in accordance with the terms of the advertisement shall be deemed and construed to be a compliance with any and all requirements of this title relative to the time of the preparation by the engineer of such plans and specifications.   And in cases of any contract heretofore let according to such plans and specifications, where the plans and specifications were so prepared, the same shall be deemed and hereby are declared to have been prepared a sufficient length of time before the letting to fulfill the requirements of this section."

It is urged that the legislative construction, by chapter 950 of the Laws of 1895, of sections 155 and 156, as they existed when this

action arose, controls the rights of these litigants, and is binding on the courts. The constitution of this state vests all judicial powers in the courts, and none in the legislature; and the latter is without power, under the constitution, to enact that pre-existing statutes shall be construed so as to affect causes of action then existing or actions then pending, as prescribed by the subsequent and declaratory act. People v. Board of Sup'rs, 16 N. Y. 24; Bank v. Hale, 59 N. Y. 53, 62; Ogden v. Blackledge, 2 Cranch, 272; Postmaster General v. Early, 12 Wheat. 136, 148; Todd v. Clapp, 118 Mass. 495; Cunningham's Appeal, 108 Pa. St. 546; Cooley, Const. Lim. (3d Ed.) 93, and cases cited. The amendments to sections 155 and 156 made by chapter 950 of the Laws of 1895 have no effect on this litigation.

It is insisted that the action of the common council in the proceeding to pave the street with brick was void, because the petition to and determination by the common council provided that the paving should be done "with vitrified paving brick manufactured by the New York Brick & Paving Company, of Syracuse, New York," which prevented free competition, and that, this proceeding being void, the only valid proceeding was to pave with asphalt, and that the letting thereunder was to the lowest bidder. There is no evidence in the record showing that these bricks were made under a patent, or that they were not generally for sale in the market. The petition and determination did not require that the brick should be purchased of the New York Brick & Paving Company, or of any particular dealer, but the contractor was left free to purchase from any one having such brick for sale; and the proposed contract did not, under the evidence in this record, prevent, or tend to prevent or to restrict, fair competition.

The judgment should be reversed and a new trial granted, with costs to abide the event. All concur, except WARD, J., dissenting.