JACOB PAUL, Appellant, *v.* THE CITY OF NEW YORK and Others, Respondents.

*Taxpayer's action — the execution by one commissioner of parks of a contract which has been awarded by the park board does not justify a taxpayer's action — impeachment of a comptroller's certificate — scope of the supervision of the court over official acts.*

Under section 419 of the charter of the city of New York (Laws of 1897, chap. 378), providing that all contracts for work or supplies "shall be made by the appropriate heads of departments," and that "all contracts shall be entered into by the appropriate heads of departments," where the park board, which is the head of the department of parks, awards to the lowest bidder a contract for supplies required by it and by resolution refers it to the commissioner of parks for the borough for which the supplies were designed to investigate the quality of the supplies and, if they are of the required quality, to execute the necessary contract, it is not an illegal official act, within the meaning of the Taxpayers' Acts (Laws of 1881, chap. 531, as amd. by Laws of 1887, chap. 673), for the city officials to recognize the contract made by the park commissioner in pursuance of such resolution.

In the absence of any allegation of fraud or corruption on the part of the city officials in determining whether the supplies furnished under the contract were of the required quality, the court has no power to review such determination n an action by a taxpayer to prevent the performance of the contract.

The force of a certificate of the comptroller, to the effect that there were funds applicable to the payment of the amount due under the contract, and of an allegation by him that he executed the certificate as required by section 148 of the charter, is not overcome by evidence tending to show that the comptroller had stated that he signed the certificate by mistake and that it was not intended to be delivered.

APPEAL by the plaintiff, Jacob Paul, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 12th day of October, 1899, vacating a temporary injunction.

*L. Laflin Kellogg,* for the appellant.

*Theodore Connoly,* for the respondents.

INGRAHAM, J. :

The plaintiff, a taxpayer, seeks in this action to enjoin the defendants, the city of New York, the commissioner of parks for the boroughs of Brooklyn and Queens, and the comptroller of the city of New York, from carrying out and executing a certain contract made with the defendant Maillie, and from receiving deliveries of materials or supplies thereunder, enjoining the comptroller of the city of New York from indorsing upon said contract a certificate that there remained unexpended or unapplied a balance of an appropriation or fund sufficient to cover the expenses of executing the said contract, and enjoining the defendant Maillie from making any delivery under said contract, and the city of New York and the comptroller from paying out any moneys of the city to Maillie under the said contract.

There are two grounds upon which the application is made: *First,* that the contract is illegal, in that it was executed by the defendant, a park commissioner, for the boroughs of Brooklyn and Queens, and not by the board of park commissioners, and that no certificate of the comptroller, as required by section 149 of the New York charter (Laws of 1897, chap. 378), has been made. *Second,* that the said commissioner for the boroughs of Brooklyn and Queens has received certain gravel under said contract which does not comply therewith, and is not of the quality required thereby.

The condition under which a taxpayer can sustain an action against officers of a municipal corporation has been considered by the Court of Appeals in several late cases. In *Talcott* v. *City of Buffalo* (125 N. Y. 288) the court, in construing the statute authorizing a taxpayer to maintain an action, said: "We have referred to the origin of this statute under which the action is brought, the title of the act of 1872, and the language used by the Legislature subsequently when re-enacting it in 1881 and 1887, for the purpose of ascertaining whether it was intended to authorize a taxpayer to maintain an action against the members of the common council in a city, and the administrative officers thereof, for the purpose of

restraining officials acting within the limits and scope of their powers and discretion, such as is alleged in the complaint in this action, and we are of the opinion that it was not. Full force and effect can be given to the statute by confining it to a case where the acts complained of are without power, or where corruption, fraud or bad faith amounting to fraud is charged." In *Ziegler* v. *Chapin* (126 N. Y. 348) the court in discussing the same provisions of law said: " The action authorized by section 1925 of the Code is one which the taxpayer may bring against the public officer because of some fraud or bad faith on his part, or to restrain some illegal action. It was not intended as a mode of putting an incapable or confiding official under the protecting guardianship of the court, and of making him a ward in chancery to be shielded from the effects of his own folly, nor to enable a taxpayer to try a question of fraud between the officer and those who are dealing with him. * * * It is only when, in the face of explanation and knowledge, he still refuses to act, and persists in carrying out the wasteful contract, that an action against him is needed; and then it rests upon his misconduct, upon his collusion and fraud, which must be alleged and proved."

The construction thus given to the statute under which a taxpayer may bring a suit against public officials precludes the court from determining whether or not the gravel furnished under the contract was such as was required thereby. Under the contract and charter that question was to be determined by the city officials, and upon them rests the duty of inspection and acceptance of the gravel as provided for by the contract. The responsible officers of the borough of Brooklyn have certified that the gravel delivered under the contract was in compliance with its terms, and have produced independent evidence to the same effect. The responsibility is upon the public officials to determine that question, and there is no evidence to show that their determination was influenced in any way by fraud or corruption. The court was justified, therefore, in refusing to consider the question as to whether or not the gravel furnished was in accordance with the terms of the contract.

The remaining question to be considered is whether this contract was void, so that it was illegal for the officials of the city to recognize it or act under it. The right to maintain such an action is given by chapter 673 of the Laws of 1887, amending chapter 531 of the

Laws of 1881. By section 1 of that act " all officers    *    *    *    acting or who have acted for and on behalf of any county, town, village or municipal corporation in this State    *    *    *    may be prosecuted, and an action or actions may be maintained against them to prevent any illegal official act on the part of any such officers." To justify this action it must be shown that these defendants are about to commit an "illegal official act," or about to commit waste or injury to the property, fund or estate of the municipal corporation.

The plaintiff alleges that the contract under which those defendants are acting is illegal on two grounds : (1) That it was not executed by the park board, consisting of three members, but was executed by the commissioner of parks for the boroughs of Brooklyn and Queens; and (2) that the certificate required by law to be made by the comptroller has not been made. By section 419 of the charter it is provided that " All contracts to be made or let for work to be done or supplies to be furnished    *    *    *    shall be made by the appropriate heads of departments, under such regulations as shall be established by ordinance or resolution of the municipal assembly.    *    *    *    All contracts shall be entered into by the appropriate heads of departments, and shall, except as herein otherwise provided, be founded on sealed bids or proposals." It appears in this case that the department of parks, which consists of three members, advertised for bids or estimates ; that in answer to that advertisement, the defendant Maillie submitted the lowest bid, and the contract was duly awarded to him at an open meeting of the park board, all three members being present and voting in favor of it. The statute, therefore, was complied with, the head of the department of parks, the park board, having awarded the contract to the lowest bidder. The statute further provided that all contracts shall be entered into by the appropriate heads of departments. By section 607 of the charter it is provided that the head of the department of parks shall be called the park board ; said board to consist of three members, who shall be known as commissioners of parks of the city of New York ; and in appointing such commissioners the mayor shall specify the borough or boroughs in which they are respectively to have administrative jurisdiction. The contract was awarded by the park board, the head of the department of parks, to the defendant Maillie ; and the park board, by resolution, referred

it to the commissioner of parks for the boroughs of Brooklyn and Queens to ascertain as to the quality of the gravel, and to execute the necessary contract, upon finding the gravel to be of the quality required. In pursuance of this authority, the commissioner appointed for the boroughs of Brooklyn and Queens investigated the quality of the gravel proposed to be furnished, and, finding the gravel to be of the quality required, executed a written contract in behalf of the city of New York.

It is claimed that this written contract thus executed was invalid as a contract, and that it was, therefore, illegal for the city officials to recognize it. By the action of the park board awarding this contract to the lowest bidder, the person to whom the contract was awarded became entitled to receive a written contract from the city upon complying with the conditions prescribed in the bid, and the city would be liable for refusing to execute such contract or refusing to allow the lowest bidder, to whom the contract was awarded, to complete his contract. The relation that existed was created by the awarding of the contract by the park board, under the provisions of the charter, and I can see no reason why the formal signing of the written contract evidencing the obligations of the respective parties, cannot be performed on behalf of the park board by the member of the board who had administrative jurisdiction in the borough to which the contract related. But however that may be, it is certainly not an illegal official act for the city officials to recognize or act under the obligations created by the acceptance of the bid of the lowest bidder, and awarding him the contract and allowing him to furnish to the city the articles that he offered to deliver, and which the city, by the acceptance of his bid and the awarding of the contract to him, became obligated to receive. If the city officials refused to recognize the contract, and refused to allow him to proceed under it, the city would be liable in damages as for a breach of contract. It cannot be said, therefore, to be illegal for the officials of the city to do what the city had bound itself to do. As before stated, there is no express provision of the statute as to the individual who is to execute the formal contract; and while the contract must be awarded by the heads of departments, the mere formal execution of the instrument evidencing the contract that has been before made is not

illegal because not signed by each of the commissioners who consti-
tuted the park board.

The further objection is taken by the plaintiff that the contract
is void because the certificate required by law to be made by the
comptroller in order to make a binding obligation upon the city,
has not been made. Section 149 of the charter provides that no
contract hereafter made, the expense of the execution of which is
not by law or ordinance, in whole or in part, to. be paid by assess-
ment upon the property benefited, shall be binding or of any force
unless the comptroller shall indorse thereon his certificate that there
remains unexpended and unapplied, as therein provided, a balance
of the appropriation or fund applicable thereto sufficient to pay the
expense of executing such contract. The contract in question is
produced, and annexed thereto is a certificate signed by the comp-
troller as required by the statute. The comptroller, in an inde-
pendent answer to the complaint, alleges that he made and executed
the certificate as required by section 149 of the New York charter.
It is not claimed that this certificate is false, or that there was no
appropriation or balance of an appropriation unexpended that was
applicable to the payment of the amount due under this contract.
It is sought by the plaintiff to break the strength of this certificate
by evidence tending to show that the comptroller had stated that
he signed the certificate by mistake, and that it was not intended that
it was to be delivered. Such a declaration is entirely insufficient to
overcome the force of the certificate duly executed by the comptroller,
coupled with his formal declaration in his answer that he signed the
certificate as required by the section of the charter referred to.

We have come to the conclusion, therefore, upon the facts pre-
sented to the court below, that those municipal officers were not
committing an illegal act in acting under and in pursuance of the
provisions of this contract, and that the court had no authority in
this action, under the statute referred to, to adjudicate whether or
not the articles furnished under this contract are as provided for
therein, in the absence of any allegations of fraud or corruption.
There is no evidence to show that any of these officers have been
guilty of fraud, corruption or bad faith, or that they have acted
otherwise than with honest motives to the best of their judgment;
and the only fact in dispute is that their determination is not con-

curred in by the plaintiff and the competitors of the successful contractor, as to the quality of the gravel furnished.

We think, therefore, that the court below was justified in refusing to continue the injunction, and the order below should be affirmed, with ten dollars costs and disbursements.

VAN BRUNT, P. J., BARRETT, RUMSEY and McLAUGHLIN, JJ., concurred.

Order affirmed, with ten dollars costs and disbursements.