(31 Misc. Rep. 205.)

BERGHOFFEN v. CITY OF NEW YORK et al.

(Supreme Court, Special Term, New York County. April, 1900.)

MUNICIPAL CORPORATIONS—STREET PAVING—PROPOSAL FOR BIDS—PROVISIONS— REASONABLENESS.

A proposal for bids for asphalt paving contained a provision that any bidder proposing to offer material not heretofore used in the city must, four days before bidding, file a certificate showing some place where the material has been laid; its area, and date accepted, which must be two years previous; and that said pavement has worn satisfactorily; which certificate must be signed by the chief municipal officer and the engineer who had charge of the work; also a statement of the location and capacity of the factory where such material is prepared. Held, that such provision was a reasonable one, and hence an injunction will not issue at the instance of a taxpayer to prevent the city from entering into a contract with a higher bidder than one who offered a material not heretofore used in the city, but who failed to comply with such provisions.

Action by Simon H. Berghoffen, as a taxpayer, against the city of New York and others. Motion for injunction. Denied.

Kellogg, Rose & Smith (L. Laflin Kellogg, of counsel), for plaintiff.

John Whalen, Corp. Counsel (Charles Blandy and E. J. Freedman, of counsel), for defendants.

LAWRENCE, J.   This is a motion on the part of the plaintiff, as a taxpayer, to continue a temporary injunction restraining the defendants from entering into any contract based upon the bids received for doing the work mentioned in the complaint, from receiving deliveries of materials and supplies thereunder, and enjoining and restraining the defendant James P. Keating, as commissioner of highways of the city of New York, from carrying out, or attempting to carry out, any pretended contracts entered into in pursuance of the advertisement or letting referred to in said complaint, and enjoining and restraining the defendant Bird S. Coler, as comptroller of the city of New York, from indorsing upon any pretended contracts for the work referred to in the complaint any certificate as provided by law to be indorsed upon valid contracts, and enjoining and restraining the city of New York, and said Coler, as comptroller thereof, from paying out any moneys of the said city under any such pretended contracts under the letting and advertisement referred to in the complaint.   The contracts referred to are seven in number, providing for the regulating and paving with asphalt pavement of certain streets in the city of New York.   On the 28th day of December, 1899, James P. Keating, as commissioner of highways, advertised that he would receive sealed bids or estimates for doing the work referred to in the complaint, until 11 o'clock a. m., on January 11, 1900.   The proposals for all of said contracts and specifications contained provisions, which are set forth in detail in the moving papers, which related to the depositing of samples with the commissioner of the material proposed to be used in the paving mixture, together with the formula of its composition.   Said proposals also required that:

"Any bidder proposing to offer material for asphalt paving not heretofore used by or in this city, on streets paved under the jurisdiction of the department of highways, in addition to the above requirements, must file an original certificate, with a certified copy of the specifications whose terms it fulfilled, four (4) full days (excluding Sundays and holidays) before the time of making his bid, which certificate must show some other locality where pavement of such material has been laid, its area, which must be at least 10,000 square yards, the date at which it was accepted, which must have been at least two (2) years previous to the issuance of the certificate, and that the said pavement has worn well and satisfactorily; to be signed and duly acknowledged by the chief municipal officer having charge of such work in the city or cities where such pavement has been laid, and by the city engineer under whose directions it was laid;·also a statement of the location and the capacity in square yards per day of the works or factory where the paving material is to be prepared. No bids will be received or considered unless the deposits of materials and the statements referred to above are made within the time prescribed; and unless these conform to the requirements of the specifications, and are satisfactory to the said commissioner, the bid will be regarded as informal."

The plaintiff alleges that the New Jersey Mexican Asphalt Company, desiring to compete with other bidders for the awarding of the said contracts, made an offer in good faith, which has not been impugned, to comply with all the specific requirements of the commis-

sioner in regard to the letting of these contracts; and it is claimed, among other things, that the samples which were tendered by that company to the commissioner of highways were declined, and that he refused to accept them; and, furthermore, that all the certificates and papers called for were accepted and received by the commissioner without objection, and retained by him, and are now in his possession. It is also alleged that upon the 11th day of January, 1900, the New Jersey Mexican Asphalt Company tendered to the clerk of the department of highways in charge of the estimate box, and attempted to place therein, bids or proposals, in due form as required by law, for the performance of the work by the New Jersey Mexican Asphalt Company of all the contracts set out in the complaint; that a certified check for the correct amount, made payable to the proper officer, was also tendered at the same time, and that said clerk absolutely refused to permit the deposit of said bids or receive the said check; that thereupon the officers of the asphalt company, with the bids and checks in their possession, called upon the commissioner of highways in person, and demanded that their bids and proposals should be received. Plaintiff claims that the refusal of the commissioner to receive the said bids was fraudulent and in bad faith, and, as he is informed and believes, in pursuance of a fraudulent scheme on the part of said Keating, acting in collusion with other bidders, to prevent the said New Jersey Mexican Asphalt Company from bidding for the work called for in said public notice or advertisement, and to prevent their competition; that the requirements in said proposals were unreasonable, unfair, and fraudulently prepared and issued, for the purpose and intent of limiting competition and confining the same to a small class of bidders; that the entering into any contracts by the defendant Keating would be illegal official acts; also that by reason of the said illegal and fraudulent acts and conduct on the part of said defendant Keating, and his refusal in bad faith to receive and consider the bids and proposals offered by said New Jersey Mexican Asphalt Company, the interests of the taxpayers of the city, including the plaintiff, will be jeopardized and injured; and that the city will be compelled to pay for work under illegal contracts, not made in the way provided by law, greatly to the damage of said city and its taxpayers, and to the unlawful waste and injury of its estate. All the allegations in the defendants' papers, in regard to fraudulent intent and purpose alleged by the plaintiff, are denied by the commissioner of highways, and it may well be doubted whether the allegations as they stand are sufficient to bring the plaintiff's alleged cause of action within the provisions of the taxpayers' act (Laws 1892, c. 301). Sheehy v. McMillan, 26 App. Div. 140, 49 N. Y. Supp. 1088; Terrell v. Strong, 14 Misc. Rep. 258, 35 N. Y. Supp. 1000; Kittinger v. Traction Co., 160 N. Y. 377, 54 N. E. 1081. Assuming these allegations, however, to be sufficient, if not denied, in view of their absolute denial the main point involved in the disposition of this motion resolves itself into the question whether there is anything in the terms of the contract which is contrary to the provisions of the charter, or the ordinances of the city passed pursuant thereto. It does not seem to me that the

provision requiring a bidder who has not done work in this city to show some locality where pavement of such material as he proposes to use has been laid can be said to be unfair, unreasonable, or unjust. The affidavits read on the part of the defendants show that as soon as the commissioner of highways came into office he called to his aid the engineers of his department, and imposed upon them the responsibility of formulating rules which should safeguard the rights of the city in that respect, and, as a result of the combined judgment of those engineers, the provisions which are now made the subject of attack in this action, were adopted. It also seems to me that the city had the right to protect itself from the bids of irresponsible and incompetent persons by making such provisions. Nor do I think that the two cases relied upon by the plaintiff's counsel, to wit, Boon v. City of Utica, 5 Misc. Rep. 391, 26 N. Y. Supp. 932, and Larned v. City of Syracuse, 17 App. Div. 19, 44 N. Y. Supp. 857, are, as he claims, exactly similar to the present case, and that they conclusively show the absence of power on the part of the commissioner to insert the provisions in the proposals which are now challenged by the plaintiff. In the case of Boon v. City of Utica, it appeared that the common council of that city sought to restrict the pitch to that obtained from Pitch Lake, in the island of Trinidad, which, at the time the proposals for doing the work were made, was a monopoly in the city of Utica, thus limiting and restricting competitive bidding, and that the action of the council, therefore, was illegal and void. In Larned v. City of Syracuse, it appeared that the charter of that city required that a public improvement, such as the paving of a street, involving an expenditure exceeding $75, be done by contract, to be let to the lowest bidder; and that the contract in question, and the petition, the resolution of the common council, notice to contractors, and specifications filed all required paving to be done with vitrified paving brick manufactured by the New York Brick & Paving Company of Syracuse, provided the brick be furnished by that company to the contractor at a price not exceeding $11 per thousand. It was held that the contract was void, for the reason that the clause in question did not permit of the free competition contemplated by the terms of the charter. In each of those cases it will be observed that the ordinances of the city under which work was done, and the specifications under which the contract was to be let, limited the contractor to one particular kind of material, which in each case was owned exclusively by a particular corporation. From that corporation each bidder would, of course, be obliged to obtain his material. In the case at bar no such restriction exists, and the restrictive provision which is complained of by the plaintiff is a provision which will enable the commissioner of highways to ascertain whether the bidder is competent from experience in other localities to perform his contract; in other words, it is a provision which would be general in character, and be uniform throughout all the boroughs in this city, and yet which would, as far as possible, protect the interests of the city in regard to asphalt paving. It appears from the affidavit of Mr. Foye, the principal assistant engineer of the department of highways, that when this form of specification was agreed upon and completed, and approved by the commissioner of high-

ways, it became the form under which all asphalt pavement since such approval has been advertised, let, and performed in all the boroughs of the city. It also appears by Foye's affidavit that said specifications are much more liberal in their character than those which existed prior thereto, which permitted only the use of asphalt mined from Pitch Lake, island of Trinidad, or from the Alcatraz mine of California. Under these circumstances, I do not think that it can be fairly argued that the action of the commissioner of highways was illegal or fraudulent. Paul v. City of New York, 46 App. Div. 71, 61 N. Y. Supp. 570. It is also to be remarked that it appears by the papers that the New Jersey Mexican Asphalt Company was not the lowest bidder upon any but one of the contracts for work referred to in the complaint, and as this is on its face a contest, not between one company and the city, but between the taxpayer and the city, I am of the opinion that the plaintiff has not established a standing in court. It follows, therefore, that he is not entitled to the injunction which he seeks.

Several other questions were discussed upon the argument, but I think sufficient has been stated already to show that this is not a case, in view of the denials contained in the defendants' answer and in the affidavits presented by them, in which an injunction pendente lite should be continued. Those questions can be better disposed of upon the trial of the action, where an opportunity will be given to each side for an examination of witnesses. The motion to continue the injunction will therefore be denied, with $10 costs.

Motion denied, with $10 costs.