THOMAS YARNOLD, *et al.*, v. THE CITY OF LAWRENCE, *et al.*

1. POWERS OF CITIES; *Street Improvements; Patented Pavements.* The law of 1868 concerning cities of the second class provided that, before any contract for street improvements should be let, the city engineer should make and submit to the council an estimate of the cost thereof, and that in advertising for bids such estimate should be published: *held,* that thereby the city was not precluded from making a valid contract without any advertisement for bids, and was not compelled in case of an advertisement to let the contract to the lowest bidder.

2. ———— May not a city, though expressly required to let all contracts to the lowest bidder, let a valid contract for improving its streets by a process covered by a patent, and subject to a monopoly?

3. STREET BONDS; *Contract for Improvements.* A contract by a city of the second class for street improvements may be made payable in the street bonds provided for in section 17 of chapter 62 of the laws of 1871.

4. ———— In such a case all the proceedings anterior thereto, including the estimate of the cost required of the city engineer, may be had upon the basis of the manner of payment.

*Error from Douglas District Court.*

INJUNCTION, brought by *Yarnold* and fifty-eight other lot-owners of the city of Lawrence, as plaintiffs, against said city, and the treasurer of Douglas county, as defendants, to enjoin the collection of certain special taxes. The facts and proceedings sufficiently appear in the opinion, *infra*. A temporary injunction granted at the commencement of the action

was afterward, in June 1873, on defendants' motion, dissolved; and from the order dissolving said injunction the plaintiffs appeal, and bring the case here for review.

*Nelson Cobb*, and *Riggs, Nevison & Simpson*, for plaintiffs:

1. The powers of municipal corporations are strictly construed: *City of Leavenworth v. Rankin*, 2 Kas. 357; 5 Kas. 543; 2 Kas. 489; 1 Kas. 432. And where the corporation exercises a power conferred by statute, it must strictly pursue the power, or its acts are void: 6 N. Y. 92; 12 Wend. 165. Where a municipal corporation is by law required to let contracts for paving to the lowest bidder, it has no power to let contracts for patent pavements, because that excludes competition: 23 Wis. 590; 33 N. Y. 309, 323; 20 N. Y. 312; 4 Abb. Pr. N.S. 397; 21 La. An. 143; 35 Cal. 699; Dillon Munic. Corp. § 389, and note. When law requires officers to advertise for bids, it is their clear duty to let to the lowest responsible bidder. The only object of the bidding is to secure competition. The ordinance of the city which is unrepealed, is a law; and it can be repealed only by ordinance. The statute and ordinance clearly make it the duty of the city government to advertise for bids, and let its contracts to the lowest responsible bidder; Gen. Stat. 169, § 31; and no valid contract could be made without complying with the provision: 2 Kas. 367. No such estimate as the law requires was made by the city engineer. The estimate was of the costs of the pavement, including royalty on the patent-right, and payable in bonds of the city, without estimate of the value of the bonds.

2. There is no authority for making the contract payable in bonds. There is no authority for doing so in any case. The authority for issuing street bonds to contractors performing work, or furnishing materials, does not authorize the making of contracts for work payable in bonds to pay an indebtedness existing against the city. That clause, subdivision 38, p. 166, is qualified by § 32, p. 169, providing that bonds shall not be sold for less than 90 cents on the dollar.

If bonds could be contracted to be taken in payment in a contract for work and materials, this provision would be entirely evaded, and no check on the power, of the public agents as to the price of bonds would remain. If they desire to dispose of bonds at fifty cents discount, they can do so. The law must be so construed as to carry out its policy, and prevent the disposition of bonds at a sacrifice of over ten per cent: 23 N. Y. 439, 453, 458; 1 Am. Law Reg. N.S. 290. Authority to borrow money to pay, is not an authority to issue bonds in payment: 7 Jones Law, (N.C.) 275.

The city having no authority to issue such bonds they were void, and the assessment to pay them is void: 2 Kas. 115. The assessment being illegal, injunction may properly be granted to restrain its collection: Code, § 253. And see, 22 Ill. 147; 15 Johns. 510; 10 Ill. 461; 21 Barb. 361.

*Thacher & Stephens,* for defendants:

The principal question is, whether a municipal corporation has in this state the right to use a patented process of street pavement, or not. Upon principle it would seem that there should be no question, unless the use was expressly prohibited by plain legislative enactment. Patents are issued to individuals for meritorious inventions, and the world would go back many years, if to-day we could be deprived of all use of articles for the invention of which patents have been issued. The hand sickle would take the place of the reaper. The ox, with his tread, would replace the thresher. The wooden plow would again scratch the ground. The steam engine would vanish. The post-boy replace the telegraph; and the man who would think of paving the place where Massachusetts street now is, would be justly laughed at as a visionary schemer. And while the world advances, can there be a reason why municipalities should stand still? Is there anything compelling them to do so, short of the coercion of the legislature? It is not charged that such legislation exists, except inferentially in compelling the advertising for proposals. But the statute under which the most of the acts in

ascertaining and assessing these special taxes were done, and under which all were so done which affect this question, contains no provision whatever requiring the contract to be let to the lowest bidder; nor did the statute require the city government to seek for competition in any form. (Laws of 1871, p. 149.) The plaintiffs are then bereft of their whole argument. The city government is given full power in their discretion to make the improvement. They have exercised that discretion, have even gone the full length of advertising for proposals for various kinds of pavements, and have accepted such proposal as they deemed best for the interest of the city. Even had they been compelled by statute to so advertise, and to let the work to the lowest bidder, their action is legal, and will be upheld: 56 Barb. 1; 17 Mich. 246; 6 Lansing, 92; 50 N. Y. 513.

The opinion of the court was delivered by

BREWER, J.: Plaintiffs in error, plaintiffs below, brought their action in the district court of Douglas county, seeking to restrain the defendants from selling their property for the non-payment of certain special taxes, and obtained, without notice, a temporary injunction. Subsequently upon motion the injunction was dissolved, and this ruling is the matter brought here for review. Two or three important questions are presented. One, and perhaps the most important, is this: The tax in dispute was for the pavement of Massachusetts street in the city of Lawrence with the Wyckoff pavement. It is insisted that this pavement, being covered by a patent, excludes competition, and that therefore the city which was by law obliged to let all contracts to the lowest bidder, had no power to let a contract for such an improvement. The right of a city to avail itself of patented inventions in the improvement of its streets, etc., where the law required the letting of contracts to the lowest bidder, has been before the courts of several states, and the adjudications thereon are not uniform. In Wisconsin, California and Louisiana, the right has been denied; while in Michigan and New York it has

been sustained. *Dean v. Charleton*, 23 Wis. 590; *Nicolson Pavement Co. v. Painter*, 35 Cal. 699; *Burgess v. Jefferson City*, 21 La. An. 143; *Hobart v. City of Detroit*, 17 Mich. 246; *Matter of Anthony Drugro*, 50 N. Y. 513. These cases are alike in these matters, that in each the precise question was as to the power of the city to charge the cost of the improvements on the adjacent lots, and also that the city was expressly required to let the contract to the lowest bidder. They differ in these respects: In Wisconsin, it is provided that the estimates of total cost and expense to each lot shall be filed in the office of the city clerk, time fixed for doing the work, and notice thereof given to the lot-owners. If the work is not done by the lot-owners within that time, then it may be let by contract to the lowest bidder. In California, the bids are opened and the work awarded to the lowest responsible bidder. Then notice is published of the award, and the owners of a major portion of frontage may take the contract upon the same terms. If they fail to take the contract within the specified time, it is then finally given to the party to whom it was first awarded. In both these states, therefore, it will be noticed that special provision is made for securing to lot-owners the privilege of doing the work themselves, a privilege the courts consider of no value if the contemplated improvement is covered by a patent, and can only be made by the patentee, or such person as he chooses to permit. In Louisiana, the court notices and lays stress on the fact that the city may, under the general grant of power to improve, etc., avail itself of any patent by making the cost of such improvement a charge on the general funds of the corporation, and is only restricted to contract with the lowest bidder when it seeks to throw the cost of the improvement on the adjacent lot-owners; while in New York and Michigan there is a general restriction on the power of the city to enter into contracts above a specified amount without letting them to the lowest bidder — thus, as the courts say, if the doctrine announced in the other courts be correct, cutting off the city from the right to avail itself of those improvements

in pavements, sidewalks, etc., which the genius of our inventors is constantly discovering, until after the expiration of the patents therefor.    The question is a doubtful one, and one on which courts will continue to differ.    The writer of this opinion is inclined to favor the views of the courts in Michigan and New York upon this question.    There is however such a distinction between the case before us, and those cited, as will enable us to dispose of it without definitely deciding this question.    In each of those cases there was an express direction, that the contract be let to the lowest bidder, and upon that rested the argument of the courts.    Here, there is no such express direction; nor is it, we think, necessarily implied from any of the express directions.    Sec. 31, of ch. 19, Gen. Stat.' of 1868, p. 169, is the section from which the implication is claimed.    That section provides that, prior to any contract the city engineer shall make and submit to the council an estimate of the cost, and that in advertising for bids the amounts of such estimate shall be published.    Counsel contend that the city is required to advertise for bids, and that therefore when the bids are received, she must let to the lowest bidder.    We dissent from both premise and conclusion.    The section does not declare that before any contract is let an advertisement shall be made for bids.    It simply says that "*in* advertising for bids," certain things shall be published.    Requiring, that when an advertisement is made, certain things shall be published, is by no means equivalent to requiring that advertisements be made in all cases.    We see no reason to doubt the right of the city under that section to make a valid contract without any advertisement.    Nor does it necessarily follow from the fact of an advertisement for bids, that the contract must be let to the lowest bidder.    There is a strong implication that such ought to be the result, but it is not the necessary legal conclusion. We think therefore that the contract in question must, under the law in force at the time it was made, be sustained.

Another important question is, as to the power to pay and to contract to pay for such improvements in bonds.    The

contract provided for the payment in bonds, one-third paya-
ble in one year, one-third in two, and the balance in three
years, and the entire transaction from the first resolution of
the council to the acceptance of the work seems to have pro-
ceeded upon the idea of payment in such manner.    It is earn-
estly contended that this was beyond the power of the city.    By
paragraph 38 of § 30 of the act of 1868, incorporating cities of
the second class, Gen. Stat. 166, such cities are authorized "to
issue from time to time, street bonds to contractors  *  *  *
on such terms and in such manner as the council may provide."
This, it is contended, is limited by a clause in § 32 of same
act, which declares that "the mayor and council shall have
no power to sell or dispose of scrip, orders, or bonds at less
than ninety cents on the dollar."    If the city may legally
contract for labor to be paid for in bonds, this prohibition is
practically nullified, and the city disposes of its bonds at just
such a value as the contractor places upon them.    Therefore,
all contracts must be made upon the basis of payment in cash,
though after the debt has been contracted, it may be settled
by the city, by the issue of its bonds therefor at ninety cents
on the dollar.    But § 30 was repealed in 1871, (Laws 1871,
p. 166, § 81,) and in lieu thereof upon this matter this was
enacted:

"The assessments (those like the one in question) shall be
known 'as special assessments for improvements,' and except
as hereinafter provided shall be levied and collected as one
tax.  *  *  *  But the mayor and council shall have power
to issue the bonds of the city for the costs of paving,  *  *  * to
be made payable as follows: one-third of the aggregate amount
of such bonds of any issue in one year;  *  *  *  and for the
payment of said bonds assessments shall be made in each
year," etc. Laws of 1871, p. 149, § 17.

Now the purpose and scope of this enactment was to grant
authority to a city to distribute over three years the burden
of street improvements.    That being the obvious purpose, it
is both fair and legal that the city should contract with ref-
erence to this authorized mode of payment.    It is just to the
lot-owners, that they may know whether to encourage or ob-

ject to the proposed improvement, for they might well object to that the cost of which must be met in a single year, when they would gladly indorse the same work if they could have three years in which to pay for it. It is just to all bidders for the contract, for often the time and manner is as important as the fact and amount of the payment. It must be borne in mind that these bonds are to be paid in the same way, and out of the same property, as though the improvement was paid for in a single year, and by one assessment. So that though these instruments issued to the contractor are called bonds of the city, yet they are not like ordinary obligations, primarily chargeable upon its entire property, while the "scrip, orders, and bonds "spoken of in § 32 are doubtless its ordinary and general obligations. We think therefore that the city might legally contract for the street improvement upon the basis of payment in the manner provided in the contract before us. It would seem therefore to follow, that all the other proceedings, including the estimate of the engineer required by § 31, (Gen. Stat. p. 169,) should be had upon the same basis. These are the principal questions in the record as presented by counsel, and in them appearing no error, the judgment will be affirmed.

It is understood that the same questions are involved in the case of *McCurdy v. The City of Lawrence*, and therefore the same judgment must be entered in that case.

All the Justices concurring.