(37 Misc. Rep. 195.)

### KNOWLES v. CITY OF NEW YORK et al.

(Supreme Court, Special Term, Kings County. February, 1902.)

1. TAXPAYER'S ACTION—ANNULMENT OF CONTRACT—PLEADING.
    In an action by a taxpayer to annul a contract made by city officials, general allegations that the contract, specifications, and advertisement for bids had been fraudulently prepared and issued, and were fraudulently designed to limit competition, is demurrable for insufficiency, in failing to state the fact constituting the fraud.

2. SAME—VALIDITY OF CONTRACT—RESTRICTIONS.
    City officials are not prevented from restricting the kind and quality of materials to be used in a public improvement, nor from requiring the successful bidder for such improvement to have adequate facilities for performing it promptly, on the ground that such restriction would destroy the freedom of competition required by law.

3. SAME.
    Allegations in a complaint by a taxpayer to annul a contract made by city officials that, in preparing the specifications and advertisements for bids, they restricted them to persons with a plant capable of doing the required work, is insufficient, without an allegation of fraud in inserting such restriction.

4. SAME—LIMITING COMPETITION.
    That only one manufacturer manufactures the materials to which bids for a public improvement are restricted does not unlawfully limit competition, where the successful bidder is left free to buy the materials.

5. SAME—UNCONSTITUTIONAL STATUTORY PROVISIONS.
    That a contract of a city under a proposal calling for bids for a local municipal improvement embodied in it statutory provisions, then existing, that the contractor must pay the prevailing rate of wages, employ laborers only eight hours a day, prefer as laborers citizens of the state, and use no stone not cut in the state, which provisions have since been declared unconstitutional, does not render the contract an illegal act; the court having held that the city was liable to the contractor in the full amount, notwithstanding the saving he made by refusing to comply with the unlawful provisions.

Action by William F. Knowles against the city of New York and others to annul a contract made by the commissioners of the East River' Bridge and the Pennsylvania Steel Company. Demurrer to defenses overruled.

L. Laflin Kellogg, for plaintiff.

George Hill, for defendants.

GAYNOR, J. Of the 36 typewritten pages which this complaint and answer fill, at least two-thirds is tiresome verbiage. That the object of pleadings is to enable the court to perceive readily what the issues are seems to be quite set at naught by some of our learned profession in the county of New York. It is not saying too much to say that every trial judge in this part of the state has pleadings put before him every day which serve only to perplex and retard the trial, a tedious perusal of them being necessary in order, if possible, to derive any understanding of the issues from them.

This complaint even sets out statutes in extenso, as though it were not enough that they are printed in the statute books. The answer is an intolerable bore. It denies the allegations contained in the subdivisions of the complaint numbered "first", "eleventh", "fourteenth", "seventeenth", "eighteenth" and "nineteenth"; the other subdivisions not being susceptible of and some of them not worth a denial. Instead of the denial being in scientific form (Code Civ. Proc. § 500), that "the defendants deny each and every allegation in the subdivisions of the complaint numbered first, eleventh, fourteenth, seventeenth, eighteenth and nineteenth contained" (or that "the defendants deny that they have any knowledge or information thereof sufficient to form a belief") "excepting", etc. (making a brief reference to the things excepted from the denial), which would show in a few lines and at a glance what was put in issue, this answer by six separate subdivisions separately denies either all of the allegations or else those contained in the principal part of each of the said subdivisions of the complaint. But the pleader was not even content with all this useless verbiage; one after another, ex industria, he put each denial in the following form (to quote one as a sample): "Answering the allegations contained in the paragraph of the complaint numbered nineteenth, these defendants deny each and every of said allegations. Said paragraph reads as follows:" and then it is copied in hæc verba in full. In this way the pleader, as though he were being paid by the page, and no doubt to his great satisfaction, used six pages for what could be expressed in six lines.

Then comes a so-called "defence", or what the pleader calls an "affirmative defence" (as though there were such a phrase, or he thought there is such a thing as a "negative defence", in the nomenclature and terminology of pleading), which takes up nine pages more, and the demurrer to which for insufficiency brings these pleadings before the court for review. It is a mere rigmarole. But I am spared the labor of searching through it to see if hidden anywhere in it there may be some accidental or stray fact alleged which would be a "defence" to the action, assuming the complaint to be true in all of its allegations (that being in every case the test of the sufficiency of a "defence",—Railroad Co. v. Hinchcliffe, 34 Misc. Rep. 49, 70 N. Y. Supp. 601); for I do not think the complaint states a cause of action, and a bad answer is good enough for a bad complaint. Wenk v. City of New York, 36 Misc. Rep. 496, 73 N. Y. Supp. 1003.

The action is by a taxpayer to annul a contract for work and material made by the defendant commissioners who have in charge by statute the building of a bridge over the East river for the city, with

the defendant corporation the Pennsylvania Steel Company, and to require the money already paid thereon to be refunded to the city.

The complaint is based, first, on allegations of fraud by the said officials in the making of the contract, and resulting in waste of the funds of the city, and, second, on allegations that the making of the contract was, in other alleged particulars and irrespective of fraud, an illegal official act; following the plain words of the statute, and also the decisions, which make either of the said grounds suffice to enable a taxpayer to maintain such a suit (Laws 1892, c. 301; Ziegler v. Chapin, 126 N. Y. 342, 27 N. E. 471; Peck v. Belknap, 130 N. Y. 394, 29 N. E. 977); although, strangely enough, there seems to be a recent minor decision that an allegation of illegal official action does not suffice unless followed by an allegation that such action will cause waste (Melody v. Goodrich, 67 App. Div. 368, 73 N. Y. Supp. 741).

1. The alleged ground of fraud will be first considered. The contract for the doing of the work and the furnishing of materials (among which was a large quantity of steel) had by the city charter to be let upon advertisement to the lowest bidder (section 519, Charter of 1897); and the complaint alleges that "the said contract and specifications and the said advertisement for bids and proposals for the doing of said work were fraudulently prepared and issued." Of course this general allegation goes for naught. It is a rule of pleading so well known among us that citation of authority for it has long ceased to be necessary, that nothing short of an allegation of facts constituting fraud will suffice to tender an issue of fraud. We must therefore look to the specific allegations and see if a charge of fraud can be based upon them.

They are two, viz., that the proposals and advertisement for bids for the contract contained requirements (1) "that bids would be received only from parties having the requisite plant and facilities which had been in successful operation on work of similar character for at least one year," and (2) "that the finished steel should not contain to exceed .06 of one per cent. of phosphorus, .04 of one per cent. of sulphur, .80 of one per cent. of manganese, and .35 of one per cent. of silicon."

Then follows an allegation that the said requirements "were unreasonable and unfair, and were fraudulently prepared and issued with the purpose and intent of limiting competition and confining the same to a small class of bidders, and did limit competition and confine the same to a small class of bidders, thereby increasing the cost of the work as by said requirements, although competent and reliable bidders with the requisite plant and facilities desired to submit bids and proposals for the doing of said work, they were prevented from so doing unless their plant and facilities had been in successful operation on work of a similar character for a least one year; that the requirement in the specification as to the elements of finished steel tended to and actually did, increase the price of the work because it prohibited the furnishing of steel by any other company than the Carbon Steel Company, whose steel alone meets the requirements and conditions of said specifications, although steel manufactured by

other companies than said Carbon Steel Company is equally good and well adapted for the purposes of said proposed work."

There is no allegation that the defendant commissioners knew that only the Carbon Steel Company manufactured steel which met their requirements in respect of quality and ingredients, or that other companies manufactured a steel which though different was just as good and well adapted; and therefore the complaint states no fact upon which a fraudulent intent can be founded in that respect. But, beyond this, as will be seen later, they even had the right to call for material made by only one manufacturer.

The allegation that such requirements "were fraudulently prepared and issued with the purpose and intent of limiting competition and confining the same to a small class of bidders," is a mere general statement which must go for naught as an allegation of fraud unless the issuing of such requirements was in and of itself a fraud. In a word, if the said officials had a right to issue such requirements, and thereby limit the number who might bid (for such was the necessary effect of such requirements), then the issuing of them could not in itself support an allegation or a conclusion of fraud, any more than any other lawful act could; and therefore to allege merely that such an act was done with a fraudulent motive, without any allegations of bribery, or collusion or prearrangement, or other facts showing official fraud, is to allege a mere void conclusion.

The said requirement in respect of plant and facilities is in full as follows:

"As by far the greater part of this work can be executed only by bridge establishments of the first class, bids will be received only from such parties as have the requisite plant and facilities which have been in successful operation on work of similar character for at least one year."

If like bids were being invited by a private individual or corporation, such a requirement would be deemed prudent and wise, and even necessary, and that an agent or officer exacted it for his principal would not be any sign of fraud or breach of trust. And I know of no different general rule in respect of public officials; nor do I know of any special restriction on these public officials which would prevent them from prescribing such a requirement. There is none in the city charter, nor in the act for the construction of this great public work. The learned counsel for the plaintiff cites no authority for his contention that such restriction is in and of itself a breach of trust in a public official, any more than in a private agent.

Nor is the requirement in respect of the ingredients of the steel to be used unlawful or fraudulent in and of itself. On the contrary, it was the right and the duty of the commissioners to closely define the particular kind and quality of steel to be used to assure the safety and endurance of the bridge. It would have been neglect for them to fail to do so.

The allegation that the kind of steel prescribed is made only by the Carbon Steel Company does not change the case; for the successful bidder would nevertheless be free to buy such steel in open market, and therefore free competition to the extent required by law was not restricted. The freedom of competition which the law re-

quires officials to secure.does not prevent them from making restrictions as to the kind and quality of the material to be used. Free competition in respect of the article in kind, quality and even manufacture, decided upon by them in the exercise of their judgment and discretion, is all that is required. This is illustrated in the two cases of Larned v. City of Syracuse, 17 App. Div. 19, 44 N. Y. Supp. 857, and Smith v. Same, 17 App. Div. 63, 44 N. Y. Supp. 852. In the former the specifications of the city required that the successful bidder should use "vitrified paving brick * * manufactured by the New York Brick and Paving Company of Syracuse, N. Y., provided that said brick be furnished by the said N. Y. B. & P. Co. to the contractor or contractors for said work at a price not to exceed $11 per thousand." This was held to prevent free competition and to avoid the contract, i. e., in that by fixing the price and also requiring the brick to be purchased of a particular corporation, it prevented any competition whatever. But in the latter case, where the specification was only that the paving should be done "with vitrified paving brick manufactured by the New York Brick & Paving Company of Syracuse, N. Y.", thus leaving the purchase to be made in open market, and not prescribing a price, it was held that there was no unlawful restriction of competition. The requirement of brick manufactured by a designated corporation was held to be lawful. Where the product of a particular manufacturer is of a generally recognized excellence public officials who are required by statute to award contracts to the lowest bidder may like private individuals call for it in proposals for bids in preference to similar products. In this state a patented article may in such case be selected. In re Dugro, 50 N. Y. 513; People v. Van Nort, 65 Barb. 331. But if an article be an illegal monopoly, an agreement to pay public money for it, knowing it to be such, is illegal. Boon v. City of Utica, 5 Misc. Rep. 391, 26 N. Y. Supp. 932.

Concededly, the necessary effect of the requirements of the commissioners in the present case was to limit competition. But it was necessary in order that the great public work which they were building should be built safe and durable, and without defaults and delays, that the right material should be used, and that the contractor should be an experienced bridge builder and have a going plant and facilities long enough established and in use to be known to be adequate to carry on the work forthwith. By exacting requirements to this effect the commissioners therefore only performed details of duty and judgment required of them by law. It follows that in order to state a cause of action against them it was not enough for the plaintiff to allege that such requirements were fraudulent because they limited competition; it was necessary for him to go further, and state specific facts constituting fraudulent breach of trust by them in the giving out of the contract.

The framers of constitutions and schemes of government may grudgingly confer official power and discretion, and strive all they will to prescribe restrictions thereon, but in the last analysis the power and discretion necessary to carry out the details of government have to be entrusted to some one. The statute under which this suit is brought is not for the purpose of reviewing the exercise of such dis-

cretion, but only to frustrate or undo acts of officials which are either beyond their power, or fraudulent breaches of their official trust. Talcott v. City of Buffalo, 125 N. Y. 280, 26 N. E. 263.

2. The claim that the contract is an illegal official act, is based on the allegation that the defendant commissioners in obedience to chapter 415 of the Laws of 1897 put into the proposals for bids and into the contract a provision that the contractor should pay the prevailing rate of wages, employ laborers only eight hours a day, give preference in employing laborers to citizens of this state, and use on the work no stone not cut in this state, and that the contract should be void and of no effect unless the contractor should comply with such requirements. Since the contract was made it has been decided by our courts that the said statutory requirements are unconstitutional. People ex rel. Rodgers v. Coler, 56 App. Div. 98, 67 N. Y. Supp. 701, 166 N. Y. 1, 59 N. E. 716; People ex rel. Treat v. Same, 56 App. Div. 459, 68 N. Y. Supp. 767, 166 N. Y. 144, 59 N. E. 776. Such provision was therefore inserted without any requirement of law, for "an unconstitutional act is not a law; it confers no rights; it imposes no duties; it affords no protection; * * * it is, in legal contemplation, as inoperative as though it had never been passed." Norton v. Shelby Co., 118 U. S. 442, 6 Sup. Ct. 1121, 30 L. Ed. 178.

The said requirements no doubt necessarily caused the bids to be higher, the same as other requirements might do; but it does not follow from that alone that they were illegal, i. e., beyond the power of the commissioners to impose, without regard to the said unconstitutional statute; or that the whole contract would be an illegal official act because they were imposed. But it is not necessary to go into this question, for the same decisions which declared the said statute unconstitutional, held also on the one hand that the contractor was not bound to carry out the provision for the reason that it was imposed on him only because of such void statute, and on the other that the contract was legal and binding on the city in all respects and in full. This latter was just as plainly involved and necessarily decided as the former, for it was held that a peremptory writ of mandamus should issue to compel the comptroller of the city to pay the contractor the entire contract price, without any deduction for the amount he had profited by refusing to carry out the said provision; and this although the comptroller instead of paying had, as he had the right to do (he not being obliged to pay even after an audit, as an audit is not binding, Vacheron v. City of New York, 34 Misc. Rep. 420, 69 N. Y. Supp. 608), remitted the contractor to an action at law against the city, wherein the city could have set up as a defence that the contract was an illegal official act, or as a partial defence, i. e., in reduction of the amount to be paid to the contractor, that he had not carried out the said provision and made the additional expenditure which it required him to make. After all this it is late to claim that such a contract is an illegal official act, to be annulled by the courts at the suit of a taxpayer; for the act under which taxpayers bring suits to annul the contracts of city officials for illegality or fraud, enables them to sue only on the very same grounds upon which the city might maintain a suit or a defence to accomplish the same purpose. It is only

the neglect of the city to bring such a suit that affords a taxpayer opportunity to do so. If such suit or defence be not open to the city, there is no ground for a taxpayer's suit.

Lastly, there is an allegation in the complaint that in some of the copies of plans and specifications and form of contract prepared and given out for the convenience of those who might bid, there were mistakes, i. e., in that they differed from the official advertisement in stating that the time for the completion of the work should be 15 instead of 12 months, that the amount of the bond should be $400,000 instead of $200,000, and that the certified check to accompany the bid should be $12,000 instead of $6,000. But as no fraud is alleged in connection with this, or that any one was misled and failed to follow the official advertisement in these particulars, and had his bid rejected therefor, it should not be noticed. It is a part of the verbiage of the complaint.

The demurrer to the defence is overruled for the reason that the complaint does not state a cause of action.