FRANK MILNER, PETER SCHLICHER, JOHN H. KAFES AND THOMAS McGOVERN, PROSECUTORS, v. THE CITY OF TRENTON AND THE UNITED PAVING COMPANY.

Argued at the February Term, 1909—Decided March 18, 1910.

1. As against objection that it prevents competition between bidders, a city acting in good faith in specifications for a pavement can restrict the use of materials to those manufactured by a particular firm or owned by a patentee.

2. A demand in specifications for paving for a sample of the constituent elements of the proposed pavement, and a sample of the wearing surface, is not satisfied by the production *en bloc* of the perfected structure.

On application for *certiorari.*

.Before Justices REED, MINTURN and TRENCHARD.

For the applicant, *John H. Backes.*

For the city of Trenton, *Charles E. Bird.*

For the United Paving Company, *Frank S. Katzenbach, Jr.,* and *George A. Bourgeois.*

The opinion of the court was delivered by

MINTURN, J. The application is for a writ of *certiorari* to review a contract entered into between the inhabitants of the city of Trenton and the United Paving Company for the paving of Princeton avenue, in the city of Trenton, with bitulithic pavement.

The relators are three abutting property owners and one unsuccessful bidder for the work. The main attack upon the contract, and upon its award to the United Paving Company, is that the specifications, upon which the contract was to be granted, and upon which bids were to be received, are of a character which prevents competitive bidding.

The point urged against the specifications is that they contain a requirement for a material in the construction of the pavement, the production of which material requires the purchase of a patented article or an article only produced by secret processes; and that these patents and secrets are the monopoly of a single person; that this fact places all competing contractors at the mercy of this one party.

In view of this contention, it is to be observed that the pavement consists of two parts, one of which is not subject to the criticism already mentioned. This is the construction of a concrete foundation four inches in depth. This involves the excavation of a sub-base, rounding it, and then building a concrete foundation composed of a mortar made of Portland cement and sand in the proportion of one to three; this mortar to be mixed with crushed trap rock. The second part is what is styled the "wearing surface," to be placed upon the rough surface of this concrete, and it is this wearing surface that has

to be produced by the bitulithic process. The specifications do not stop with the foundation and then call for a wearing surface of two inches to be constructed according to the process known as bitulithic, but they proceed to define a pavement which is in fact a bitulithic pavement, and to specify the processes adopted in producing the bitulithic wearing surface. Among other things, certain mechanical devices such as a flush coat spreading machine, and stone spreading machines, which are used by the bitulithic people, with a rotary heater, and screens and bins and weighing boxes and mixers which are peculiarly adapted to accomplish the separate processes necessary to create the wearing surface, were specified.

So the specifications are, in substance, that a wearing surface in conformity with the bitulithic process shall be furnished by the contractor.

The bids invited, therefore, were practically for work, a great part of which could not be executed unless the contractor either owns the secrets and patents for this process, and controls the appliances and apparatus employed in exploiting them, or else who buys the bitulithic materials already prepared. The price of this mixture to any contractor was fixed by a letter to the inhabitants of the city of Trenton of the date of February 5th, 1908. This mixture, together with the bituminous flush coating cement and stone chips for coating the wearing surface, was to be delivered at a mixing plant to be located within three miles of the work to be performed.

As already remarked, a contractor other than the Warren Brothers' Company, who owned the secret process for compounding that mixture and the flush coating cement, must buy the material from the Warren Brothers' Company.

It is the equivalent of selecting a patent pavement and inviting competitive bidding for furnishing this pavement.

Although there has been some contrariety of judicial sentiment as to whether a city can restrict the use of materials to those manufactured by a particular firm, or owned by a patentee, the weight of authority elsewhere is that a city acting in good faith has that privilege. This is the rule adopted in this state.

In *Newark* v. *Bonnell*, 28 *Vroom* 424, it was held by our Court of Errors and Appeals that the city of Newark could invite bids for paving certain streets, the material to be used being specified as genuine "Trinidad Lake" asphaltum. Trinidad Lake asphaltum was a proprietary article and a monopoly; and it was insisted that in furnishing it, there could be no competition. It was said by Mr. Justice Garrison that the primary object of the provision of competition was the private and public interests committed to the municipal agencies, and not the convenience of the contractors and the protection of their profits. It was held that the city was not legally debarred from contracting for what it wants merely because the desired material was a subject of private ownership or the product of exclusive manufacture.

The doctrine of this case was applied in the subsequent case of *Ryan* v. *Paterson*, 37 *Vroom* 533.

In the still later case of *Bye* v. *Atlantic City*, 44 *Vroom* 402, bitulithic material was selected for paving Atlantic avenue in Atlantic City. The materials were specified, and the prices at which the materials could be obtained by any bidder were fixed by the patentee. There was a suggestion, but no proof of any collusion in the price among the bidders. It was held that council could solicit bids for the whole work as a unit, although a part only needed the proprietary or patented material. The situation in that case, although it does not fully appear in the reported case, was similar to the conditions in the present case.

The point is taken by the counsel for the prosecutors that the specifications do not call for a wearing surface constructed according to the patented formulæ of Warren Brothers' Company, or of any other persons. But it is obvious that the specifications call for the use of Warren's bitulithic cement, a proprietary article, and that the specifications of details in preparing the mixture in which the cement is to be used is for the purpose of securing a bitulithic wearing surface. This is as plain as if the specifications had stated it in so many words. The purposes of these specified processes in the words of the formulæ of Warren Brothers were probably for the pur-

pose of making it reasonably certain that the wearing surface furnished would be the genuine bitulithic article.

On the same line, it was probably the intention to secure the best results of the use of the formulæ of these proprietors, by providing that the stones of different sizes should be used in the proportions which had been previously determined by laboratory tests and which were so calculated to give the best results. So, also, was the provision that as the work progressed the substitution of hydraulic cement of fine-ground particles of crushed stone was an alternating provision to meet emergencies as they arose, and therefore we see no substantial criticism of the specifications upon these grounds.

It is contended, however, that Mr. McGovern's bid—lower than that of the United Paving Company—should have been accepted; that he had complied with the forty-ninth section of the specifications requiring the bidder to furnish samples of the materials to be used in the wearing surface of the pavement by producing a piece of the pavement laid by the Standard Bitulithic Company under the Warren Brothers' Company patent in Atlantic City. It is sufficient to say that the specifications provided that no bid would be considered unless samples of the materials to be used and a sample of the wearing surface had been deposited with the city clerk.

This clause in the specifications clearly means that the wearing surface as an entire structure resulting from the actual combination of all materials should be exhibited; and besides this, the materials of which this, as well as other parts of the structure were to be constructed, should be separately exhibited before they were combined into the actual perfected structure.

We are of the opinion therefore that under the decisions in this state already alluded to and the circumstances of the case, the application for a writ should be denied.