Argued March 8, affirmed March 30, 1915.

## SHERRETT v. PORTLAND.*

(147 Pac. 382.)

**Municipal Corporations—Street Improvements—Patented Material.**

1. In the absence of fraud, collusion or unfair dealing on the part of city officers, although the city charter provides that the work of improving a street must be let to the lowest responsible bidder, and although the city council must designate in advance the character of the improvement, such council, if it deems best, may provide that the paving of a street shall be of a certain kind of patented material, the owner of the patent not being the contractor, but having offered to furnish at a fixed price to whichever contractor might have his bid accepted: First, the right to use its patented process for paving;

---

*As to the validity of a contract for material patented or held in monopoly where a public letting to the lowest bidder is required, see notes in 18 L. R. A. 45; 5 L. R. A. (N. S.) 680, and 46 L. R. A. (N. S.) 990.    REPORTER.

75 Or.—29

second, the machinery to lay such paving; and, third, skilled labor and supervision for the work.

[As to right of municipality when required by law to let contracts at public bidding to contract for patented or monopolized article, see note in Ann. Cas. 1915B, 460.]

From Multnomah: GEORGE N. DAVIS, Judge.

Department 2. Statement by MR. JUSTICE HARRIS.

This is a suit by D. T. Sherrett, F. W. Trappe, Oscar Downing, Dan J. McGill and J. K. Lucas against the City of Portland and the Consolidated Contract Company, a corporation, to enjoin the collection of a betterment assessment.

The city council on December 4, 1910, adopted a resolution requiring the engineer to prepare plans and specifications, together with estimates, for an appropriate improvement of Milwaukee Street from the north line of Holgate Street to the north line of Nehalem Avenue, by constructing artificial stone sidewalks and curbs and paving the roadway with Hassam pavement. The city engineer on March 22, 1911, filed with the auditor plans and specifications for such improvement, with an estimate of the quantities of material required, and showing $134,892 as the probable cost of the improvement.

Thereafter, on April 12, 1911, the council adopted a resolution whereby that body deemed it expedient and proposed to improve Milwaukee Street by grading to the proper subgrade; by paving the full width of the roadway with Hassam pavement, except that portion to be improved with stone blocks; by paving the space between the rails and one foot outside of the rails of the Portland Railway Light & Power Company's tracks with stone blocks on a concrete foundation, and by laying rails not less than 7 inches in depth and weighing not less than 80 pounds per yard; by con-

structing artificial stone sidewalks and curbs; by constructing elevated wooden sidewalks 12 feet wide; by constructing elevated wooden sidewalks 6 feet wide; by constructing concrete retaining walls; by constructing inlets; by laying wooden headers; by laying water-service pipes and connections; by laying vitrified drain-pipe; and by laying corrugated ingot iron pipe; all work to be done at the places and in the manner specified in the plans and specifications adopted and the cost of the improvement, except that portion chargeable against the Portland Railway Light & Power Company, to be assessed as provided by the charter of the city against the property specially and peculiarly benefited, which property was specified by the resolution to be all the land in the district described by such resolution. From April 18, 1911, to April 28th following a notice was published, giving the resolution in full, stating that the council had adopted such resolution, and that remonstrances might be filed within 20 days from the date of the first publication. Notices were posted at each end of the proposed improvement, as required by the charter.

The council passed an ordinance on May 10, 1911, providing for the time and manner of improving Milwaukee Street between Holgate Street and Nehalem Avenue, which ordinance was approved by the mayor on May 20th following. The executive board directed that bids be advertised for, and thereupon the auditor caused a notice for bids to be published from June 21, 1911, to June 26th following. The defendant Consolidated Contract Company was the only bidder, and its offer to make the improvement for $128,219.81 was accepted. Hassam pavement and the Hassam grout mixer are protected by letters patent. The Oregon

Hassam Paving Company on May 5, 1911, filed with the city a writing as follows:

"Whereas, it is desired by Oregon Hassam Paving Company, an Oregon corporation, licensee of all of the processes and patents covering the right to lay Hassam Compressed Concrete Paving, that opportunity be given for competition in bids for the improvement of streets in Portland with the said Hassam paving; and

"Whereas, the construction of such pavements requires the use of certain patented methods and processes, and the careful and expert preparation and use of materials:

"Now, therefore, in order to provide for competitive bidding, and at the same time to secure the adoption of said Hassam Compressed Concrete Paving as the kind of pavement to be used in the improvement of streets in the City of Portland, and, furthermore, to insure the proper laying down of the same so that the work will give satisfaction, the undersigned, Oregon Hassam Paving Company, hereby agrees, for the consideration hereinafter named, to furnish to any and all bidders to whom contracts for such improvements in streets of the City of Portland may be awarded the right to lay said pavement upon the following terms and conditions:

"(1) The Oregon Hassam Paving Company grants the right to use any and all processes owned or controlled by it which are necessary to be used for the laying of said paving, said pavement to be laid in accordance with the Hassam specifications.

"(2) It will furnish to the successful bidder an expert who will give proper advice as to the laying of such pavement, and will supply a double Hassam grout mixer and a steam roller, and will also furnish all the skilled workmen necessary for operating the said Hassam grout mixer.

"(3) The price at which the said license and service is offered to any and all bidders and contractors is fifty cents ($.50) per square yard for the finished pavement. The license fees shall be due and payable on or before

the 20th of each month for all pavement laid the previous month.

"(4) Successful bidders for this work shall at all times keep accurate account and make full returns to the Oregon Hassam Paving Company on the 20th day of each month of the number of square yards laid during the previous month."

The Consolidated Contract Company made its bid on the theory that Hassam pavement was only a trade name; that such pavement was not protected by any patents, and that all the persons were free to lay a pavement which, when completed, possessed the ingredients and qualities of Hassam pavement. The Consolidated Contract Company proceeded with the work and carried it to practical completion.

The plaintiffs, who are owners of property affected by the improvement, commenced a suit to prevent the collection of assessments on account of the betterment. The charter of the City of Portland may be found in Special Laws of 1903, page 3. The plaintiffs appealed from a decree for the defendants.

For appellants there was a brief over the name of *Messrs. Emmons & Webster,* with oral arguments by *Mr. Arthur C. Emmons* and *Mr. Lionel R. Webster.*

For respondents there was a brief over the names of *Mr. Walter P. La Roche,* City Attorney, and *Mr. Lyman E. Latourette,* with an oral argument by *Mr. Latourette.*

MR. JUSTICE HARRIS delivered the opinion of the court.

The validity of the proceedings was challenged on the ground that notices had not been posted at the termini of the proposed improvement; but the evidence

shows that notices were posted in full compliance with the charter. It was asserted in the complaint that the papers in which the notices were published were not newspapers within the meaning of Sections 376, 379, of the charter, which direct that the notices shall be published in the "city official newspaper"; and the complaint further alleged that the filing of a remonstrance barred any further proceedings in the making of the improvement. The evidence fails to sustain the claim made in the complaint that the notices did not appear in the proper paper, and the evidence also discloses that the signers of the remonstrance did not represent two thirds in area of the property within the assessment district, as required by Section 377, of the charter. The plaintiffs questioned the work performed by the contractor, and claimed that the plans and specifications had not been fully complied with; but we learn from the record that the city had declined to accept the improvement in its entirety, and that at the time of the trial the Consolidated Contract Company was engaged in rebuilding a considerable portion of the improvement. The record contains no information of what occurred thereafter, and consequently there is no way of knowing whether the work was finally completed in full compliance with the terms of the contract. The objecting property owners earnestly insist that the contract made with the Consolidated Contract Company was void because the council specified Hassam pavement, thereby preventing competition, and this phase of the case stands out as the prominent feature of the controversy.

The first step to be taken in the discussion is to ascertain the provisions of such part of the charter as

may be material to the question involved.   Section 374 of the charter reads:

"The council, whenever it may deem it expedient, is hereby authorized and empowered to order the whole or any part of the streets of the city to be improved; to determine the character, kind, and extent of such improvement; to levy and collect an assessment upon all lots and parcels of land specially benefited by such improvements; to defray the whole or any portion of the cost and expense thereof, and to determine what lands are specially benefited by such improvement, and the amount to which each parcel or tract of land is benefited."

Section 375 directs:

"Whenever the council shall deem it expedient or necessary to improve any street, or any part thereof, it shall require from the city engineer plans and specifications for an appropriate improvement, and estimates of the work to be done and the probable cost thereof; and the city engineer shall file such plans, specifications and estimates in the office of the auditor. * * If the council shall find such plans, specifications, and estimates to be satisfactory, it shall approve the same. * * The council shall, by resolution, declare its purpose of making said improvements, describing the same. * * "

Provisions are made for the publication and posting of notices and the filing of remonstrances, and then Section 378, specifies that, unless a sufficient remonstrance is filed—

"the council shall be deemed to have acquired jurisdiction to order the improvement to be made, and the council may thereafter, and within three months from the date of the final publication of its previous resolution, by ordinance, provide for making said improvement, which shall conform in all particulars to the plans and specifications previously adopted."

We read in Section 379:

"Upon the approval of said ordinance by the mayor, or if the same shall become valid without his approval, the auditor shall present to the executive board at its next regular meeting, a copy of said ordinance and the estimates, plans, and specifications, previously prepared by the city engineer and adopted by the council. Thereafter, the said executive board, without delay, shall give notice by publication, for not less than five successive days in the city official newspaper, inviting proposals for making said improvement. The executive board shall have the power to award the contract or contracts for said improvement. * * Such contract or contracts shall be let to the lowest responsible bidder for either the whole of said improvement or such part thereof as will not materially conflict with the completion of the remainder thereof, but said board shall have the right to reject any or all proposals received. * * *"

The plaintiffs argue that the mandate of the charter that "such contract or contracts shall be let to the lowest responsible bidder" precludes the council from selecting a patented pavement, before calling for bids, and specifying such pavement as the only kind that will be accepted; that to select only one kind of pavement is to throttle competition if the kind chosen is patented; that in the very nature of things there can only be one bidder, and therefore no "lowest responsible bidder," if a patented improvement is alone made acceptable, since no person except the patentee is empowered to bid; and that the closing of the doors to competition has the effect of creating a monopoly which of itself is sufficient to render the contract void.

The position taken by the defendants is that by the terms of the charter the council is expressly empowered to determine the character and kind of improvement; that the power to determine the kind of

improvement is general, and not limited, and that therefore authority exists for the selection of a patented pavement; that, if the improvement chosen happens to be protected by letters patent, still all the competition is afforded which the circumstances will permit; and that, even though the patentee be the sole bidder, nevertheless he is the lowest bidder.

The question of the validity of previously selecting a designated patented pavement and making it the only kind upon which bids will be received or considered has presented a broad field for judicial debate; and from the discussion have come two widely divergent rules. One view is that a municipality is without authority to specify any patented pavement as the only one to be used in a street improvement because to do so would be completely to eliminate competition, foster monopoly, and promote favoritism, dishonesty and graft. This doctrine was announced by the Supreme Court of Wisconsin in *Dean* v. *Charlton,* 23 Wis. 590 (99 Am. Dec. 205), wherein that court says:

"But another objection is taken, which goes to the foundation of the whole proceeding; and the conclusion to which a majority of the court have come upon that will preclude the necessity of examining any of the other questions. This objection is based upon the provisions of the charter requiring all work to be let by contract to the lowest bidder, and the fact that the right to lay the Nicolson pavement is a patented right, and was owned for the State of Wisconsin by one firm in the City of Milwaukee. It is said that the charter authorizes a contract only for such work as is open to competition, and that this work was not open to competition, because nobody had any legal right to do it except the one firm that owned the patent. Upon these facts alone the objection seems to me unanswerable. And nothing seems to be necessary beyond the simple statement of the requirements of

the charter as to the mode of letting work, and the fact that this right was a monopoly, to show that the charter is inapplicable to it, and that a contract for this work would be in violation of the necessary implication from its provisions.''

The Wisconsin rule has been adhered to in the following cases: *State* v. *Elizabeth,* 35 N. J. Law, 351; *Nicolson Pavement Co.* v. *Painter,* 35 Cal. 699; *Fishburn* v. *Chicago,* 171 Ill. 338 (49 N. E. 532, 63 Am. St. Rep. 236, 39 L. R. A. 482); *Burgess* v. *Jefferson,* 21 La. Ann. 143; *Fineran* v. *Central Bitulithic Paving Co.,* 116 Ky. 495 (76 S. W. 415, 3 Ann. Cas. 741); *Monaghan* v. *Indianapolis* (Ind. App.), 75 N. E. 46. Under the rule commonly known as the Wisconsin doctrine a city cannot in all cases avail itself of a patented pavement unless different kinds of pavement are permitted to compete; for, if a patented pavement be the only one of the kind, the very fact that it is such deprives the city of the right to use the patented pavement if the specifications do not afford opportunity for competition between different kinds of pavement. If, however, the specifications are so framed as to permit different kinds to compete with each other, whether patented or nonpatented, genuine competition follows, with all the accompanying benefits to the taxpayers. The case of *Fones Hardware Co.* v. *Erb,* 54 Ark. 645 (17 S. W. 7, 13 L. R. A. 353), furnishes an interesting discussion of the question of whether or not competition between different kinds of improvement is competition in fact.

The opposite doctrine proceeds upon the theory that, if a city is denied the right to specify a patented pavement, then it may ofttimes happen that only inferior methods will be available, and therefore the taxpayers, much to their detriment, will be deprived

of the right to use the best street improvement.    The
Supreme Court of Michigan, in *Hobart* v. *Detroit,* 17
Mich. 246 (97 Am. Dec. 185), ruled that a provision
contained in a city charter requiring a letting to the
lowest responsible bidder did not preclude the
municipality from making a contract with Smith, Cook
& Co., who were exclusive owners of the right to lay
Nicolson pavement in the City of Detroit, and who
were the only bidders.    We quote the language of
Chief Justice COOLEY:

"The doctrine of the complainant leads to this con-
clusion: That whenever, from the nature of the case,
there can be no competition, the city can make no con-
tract, however important or necessary for the interest
of the city; since contracts, except by public letting,
are forbidden by the express terms of the statute, and
those by public letting are forbidden by an implica-
tion which is equally imperative.    And, if applied to
this case, however much this mode of paving may ex-
ceed all others in utility, it cannot be adopted in the
City of Detroit, or in any other city with the like pro-
vision in its charter, even although the proprietors of
the patent might be willing to lay it on terms more
advantageous to the city than those on which pave-
ment of less value could be procured.    To support this
conclusion, we must import into the statute a condition
which we must suppose to pervade its spirit, but which
is not expressed by its words.    The power which the
charter gives to the common council to cause the
streets to be paved is conferred by another section in
very ample terms, the sole condition imposed upon it
being the public letting of the contract to the lowest
bidder.    The courts, I think, should be very cautious
about importing new terms into a statute in order to
make it express a meaning which its words do not con-
vey, and they ought, at least, to first make sure that
they are not changing the legislative intent, and giving
the statute an operation that the legislature never
designed, and, perhaps, would never have assented to."

The following cases illustrate the Michigan rule: *Barber Asphalt Co.* v. *Hunt,* 100 Mo. 22 (13 S. W. 98, 18 Am. St. Rep. 530, 8 L. R. A. 110); *Verdin* v. *St. Louis,* 131 Mo. 26 (33 S. W. 480, 36 S. W. 52); *Swift* v. *St. Louis,* 180 Mo. 80, 95 (79 S. W. 172); *Paving Co.* v. *Field,* 188 Mo. 182 (86 S. W. 860); *Field* v. *Barber Asphalt Pav. Co.,* 194 U. S. 618 (48 L. Ed. 1142, 24 Sup. Ct. Rep. 784); *Custer* v. *Springfield,* 167 Mo. App. 354 (151 S. W. 759); *In re Dugro,* 50 N. Y. 513; *Newark* v. *Bonnell,* 57 N. J. Law, 424 (31 Atl. 408, 51 Am. St. Rep. 609); *Bye* v. *Atlantic City,* 73 N. J. Law, 402 (64 Atl. 1056); *Ryan* v. *Patterson,* 66 N. J. Law, 533 (49 Atl. 587); *Milner* v. *Trenton,* 80 N. J. Law, 253 (75 Atl. 939); *Knowles* v. *New York,* 37 Misc. Rep. 195 (75 N. Y. Supp. 189); *Saunders* v. *Iowa City,* 134 Iowa, 132 (111 N. W. 529, 9 L. R. A. (N. S.) 392); *Attorney General* v. *Detroit,* 26 Mich. 263; *Yarnold* v. *Lawrence,* 15 Kan. 126; *Hoolbrook* v. *Toledo,* 28 Ohio C. C. R. 284; *Silby Mfg. Co.* v. *Allentown,* 153 Pa. St. 319 (26 Atl. 646). The plaintiffs herein contend that this court is committed to the Wisconsin rule, and cite *Terwilliger Land Co.* v. *Portland,* 62 Or. 101 (123 Pac. 57), to verify their claim. That case was tried and decided upon a demurrer to the complaint, which, *inter alia,* alleged that the specifications designated Hassam pavement for the purpose of preventing competition and in order that a monopoly might be created in favor of the Oregon Hassam Paving Company; that, if the council and the city engineer would authorize, prepare and adopt plans and specifications for the laying of pavement substantially of the same kind and quality as that described as "Hassam pavement," bids would be submitted by competent and responsible bidders for the laying of the pavement in all substantial respects identical with that so classified; that it was the policy

of the council in making any street improvement to refuse to accept any bid or let any contract to others than the Oregon Hassam Paving Company for the making of street improvements classified as "Hassam." There was no allegation that Hassam pavement was patented. On the record made in that case, Hassam was at the most but a name, and it was because of such circumstances that Mr. Chief Justice McBride, in *Johns* v. *Pendleton,* 66 Or. 182 (133 Pac. 817, 134 Pac. 312, Ann. Cas. 1915B, 454, 46 L. R. A. (N. S.) 990), said:

"It is assumed that this court has committed itself to the doctrine contended for by plaintiff by its decision in *Terwilliger Land Co.* v. *Portland,* 62 Or. 101 (123 Pac. 57); but such is not the case. In that case bids were advertised for improving a street with 'Hassam pavement,' an unpatented compound. The Hassam Paving Company had copyrighted the trade name, but anybody could use the same ingredients in the same proportions and produce exactly the same pavement without any infringement on the copyright of the Hassam Company; but, as the bids called for Hassam pavement, nobody could submit a bid for such pavement *eo nomine* without infringing upon a copyright."

The facts characterizing the case of *Terwilliger Land Co.* v. *Portland,* 62 Or. 101 (123 Pac. 57), are, in a marked degree, analogous to the vitrified brick cases, examples of which are to be found in *Smith* v. *Syracuse Imp. Co.,* 161 N. Y. 484 (55 N. E. 1077), *National Surety Co.* v. *Kansas City Hydraulic Press Brick Co.,* 73 Kan. 196, (84 Pac. 1034), *Schoenberg* v. *Field,* 95 Mo. App. 241 (68 S. W. 945), and *Larned* v. *City of Syracuse,* 17 App. Div. 19 (44 N. Y. Supp. 857). In the cases just mentioned none of the brick was patented, and, although vitrified brick, as made by other firms or as branded by other persons, equally as good

as the brick chosen, and the same in quality, character and ingredients, was readily available, nevertheless the municipalities either required vitrified brick which was made by a particular firm or selected brick of a certain brand which only one person had the right to use to distinguish his make of brick. The brick was not patented; and plainly on that state of facts the selection of one make to the exclusion of all others created a monopoly. The fact that the brick was not patented prompted the court, in *Schoenberg* v. *Field,* 95 Mo. App. 241 (68 S. W. 946), to remark:

"The material here specified was not a patented material or held in monopoly, and no reason existed why the restriction to material which could be furnished by but one party should have been made."

Quite a different case is presented if the pavement which is chosen be protected by letters patent. Generally, the very fact that the pavement is patented prevents a duplication in all particulars. No one has the right to lay the identical pavement covered by the letters patent, except the patentee, because the sole purpose of granting letters patent is to confer an exclusive right, and therefore the cases involving the selection of a nonpatented pavement do not furnish a parallel to those where a patented improvement is called for. This court has not yet and is not now called upon to determine, and therefore we do not now decide, what the effect would be if a municipality should select a patented improvement and make that alone acceptable, where the bidding was confined to the patentee or his sole licensee; but we only direct attention to the fact that the case of *Terwilliger Land Co.* v. *Portland,* 62 Or. 101 (123 Pac. 57), does not go to the extent contended for by the plaintiffs herein, and that the remark quoted from *Johns* v. *Pendleton* was made advisedly.

The instant case does, however, make necessary a decision of the legal effect of the offer filed by the Oregon Hassam Paving Company. It will be observed that all bidders are given an open field to lay Hassam pavement, and for that purpose are allowed the right to use the processes owned or controlled by the company. The company agrees to furnish an expert to give advice in laying the pavement, to supply a Hassam grout mixer and steam roller, and to furnish all the skilled workmen necessary for operating the grout mixer. The compensation is 50 cents per square yard for the finished product. The offer is to grant a license, supply machinery, and furnish skilled workmen for a portion of the work required. The city contracted to pay the Consolidated Contract Company $1.75 per square yard.

Where the patentee offers to all bidders the right to use his patent upon the payment of a reasonable royalty, the courts are practically unanimous in the opinion that a contract made under such circumstances is valid, and not objectionable; but the same degree of harmony does not exist in cases where something more than the right to use the patent is involved, as where the offer includes furnishing part of the material which enters into the patented improvement. By its decision in *Johns* v. *Pendleton,* 66 Or. 183 (133 Pac. 817, 134 Pac. 312, Ann. Cas. 1915B, 454, 46 L. R. A. (N. S.) 990), this court has committed itself to the doctrine that a contract for a street improvement is not necessarily void where to all persons desiring to bid the patentee offers the right to use the patent, and offers to furnish the necessary roadway mixtures for the wearing surface, bituminous flush coating, and an expert to advise in the building of the pavement. Street improvements involving offers like the one considered

in *Johns* v. *Pendleton* have been approved in *Ford* v. *Great Falls,* 46 Mont. 292 (127 Pac. 1004), where the price exacted was $1.50 per square yard; in *Baltimore* v. *Flack,* 104 Md. 107 (64 Atl. 702), $1.45 being the stipulated compensation; in *Saunders* v. *Iowa City,* 134 Iowa, 132 (111 N. W. 529, L. R. A. (N. S.) 392), where $1.45 was the required payment; and in *McEwen* v. *Coeur d'Alene,* 23 Idaho, 746 (132 Pac. 308), the sum to be paid being $1.45; and the principle involved has met with the approval of the New Jersey court in *Milner* v. *Trenton,* 80 N. J. Law, 253 (75 Atl. 939). An offer requiring the payment of $1 for each ton of rock treated was sustained in *Perine etc. Co.* v. *Quackenbush,* 104 Cal. 684 (38 Pac. 533), although that court had previously adopted what has commonly been known as the Wisconsin rule: See *Nicolson Pavement Co.* v. *Painter,* 35 Cal. 699. Offers made by patentees to all contractors and requiring the payment of a royalty only have been sustained in the following cases: *State ex rel.* v. *Shawnee County,* 57 Kan. 267 (45 Pac. 616); *Lacoste* v. *City of New Orleans,* 119 La. 470 (44 South. 267); *Dillingham* v. *Spartanburg,* 75 S. C. 549 (56 S. E. 381, 117 Am. St. Rep. 917, 9 Ann. Cas. 829, 8 L. R. A. (N. S.) 412); *Hastings* v. *Columbus,* 42 Ohio St. 585; *Tousey* v. *Indianapolis,* 175 Ind. 295 (94 N. E. 225); *Kilvington* v. *Superior,* 83 Wis. 222 (53 N. W. 487, 18 L. R. A. 45). And the soundness of the principle seems to be approved in *Attorney General* v. *Detroit,* 26 Mich. 263, 275, by Judge CAMPBELL, who wrote the dissenting opinion in *Hobart* v. *Detroit,* 17 Mich. 246 (97 Am. Dec. 185). In *Monaghan* v. *Indianapolis,* (Ind. App.), 75 N. E. 46, proceedings for an improvement were not sustained because the offer made did not afford freedom of competition; but the Supreme Court of Indiana afterward held that the

payment of a royalty of 25 cents per square yard did not come within the inhibition of the statute. See *Tousey* v. *Indianapolis,* 175 Ind. 295 (94 N. E. 225), where the court says:

"Here, unlike in the case of *Monaghan* v. *City of Indianapolis* (Ind. App.), 75 N. E. 46, the patentee has no power, directly or indirectly, to control the award of the contract, for all bidders in the state are placed on equal terms and no restriction whatever is placed on free competition for the contract. True, the sum of 25 cents a square yard for the use of the patented process must be added to the cost of construction, but it is conceded that the use of the process is reasonably worth the added price, and therefore appellant cannot be injured. But appellant contends that the royalty of 25 cents a square yard enters into the cost of construction, and that that part of the cost was not submitted to any competition whatever, and hence, in part, the cost of construction cannot be submitted to free competition. Of course, it would not be possible for competition to exist for a license to use a patented process, for the patentee under the very terms of his letters has the exclusive right to make, use, and vend the thing patented: 30 Cyc. 815. Consequently, the logical result of appellant's contention would be that no patented process could, under any circumstances, be used in constructing a pavement under the provisions of this statute. Such contention cannot prevail. In the case of *Monaghan* v. *City of Indianapolis* (Ind. App.), 75 N. E. 46, the court expressly held that the rule there adopted did not exclude the use of a patented pavement, but did exclude the use where the patentee so held the right to use the process as to enable him to designate the contractor. There is neither reason nor authority for a rule wholly excluding the use of patented processes in constructing pavements."

The Supreme Court of Wisconsin has held that an offer of the patentee for a stipulated sum to give his services as superintendent and the right to construct

a patented crematory did not invalidate a contract where the offer applied to all bidders alike (*Kilvington* v. *Superior,* 83 Wis. 222 (53 N. W. 487, 18 L. R. A. 45); but in *Allen* v. *Milwaukee,* 128 Wis. 678 (106 N. W. 1099, 116 Am. St. Rep. 54, 8 Ann. Cas. 392, 5 L. R. A. (N. S.) 680), the same court held that a contract was invalidated by an offer like the one in *Johns* v. *Pendleton,* 66 Or. 182 (133 Pac. 817), on the ground that "the bulk of the patentee's agreement is for doing the pavement," and the offer included more than a simple royalty; and a similar offer was repudiated by the decision in *Siegel* v. *Chicago,* 223 Ill. 428 (79 N. E. 280, 7 Ann. Cas. 104). An offer permitting Hassam pavement to be laid upon terms exactly the same as the instant case, except that the price fixed was 42 cents per square yard, was upheld in *Reed* v. *Rockliff-Gibson Const. Co.,* 25 Okl. 633 (107 Pac. 168, 138 Am. St. Rep. 937), the court saying:

"But we think the law is complied with, in the absence of actual fraud or deception, when specifications are submitted to competitive bidders, although some article is specified which, by reason of the patent on it, is in the hands or under the control of a single bidder, when the contract for performing the work and furnishing the material is let to the lowest and best bidder with the understanding that the patentee would allow the use of his patent and superintend the construction of the work for whoever secured the contract."

Our attention has not been directed to any case holding that a contract was impaired by an offer which only imposed the payment of a reasonable royalty for the right to use a patent. Offers including both a license to use the patent and what is equivalent to the personal services of the patentee have been approved in California and Wisconsin, while in the Oklahoma case the use of machinery constituted an additional

feature. And, finally, offers including not only the right to employ the patent, but also the services of experts, as well as a part of the material entering into the improvement, have been sustained in the jurisdictions of Oregon, New Jersey, Montana, Idaho, Maryland and Iowa; and like offers have been repudiated in Wisconsin and Illinois, and qualifiedly disapproved in Indiana.

Upon the general question of whether a pavement may be previously selected and alone made acceptable the authorities are about equally divided, both as to numbers and eminence. The courts are practically agreed that an offer embracing only the use of a patent and the payment of a reasonable royalty therefor is not odious, because the evils accompanying a monopoly are reduced to the smallest possible minimum. Offers including both the use of a patent and a part of the material entering into the improvement have caused a divergence of judicial opinion; but the decided weight of authority is in accord with *Johns* v. *Pendleton*, 66 Or. 182 (133 Pac. 817), and the instant case, if for no other reason, is governed by the principle of *stare decisis* as we find it in *Johns* v. *Pendleton*:

The evidence in the case for decision does not disclose any fraud, collusion or unfair dealing on the part of the officers of the municipality.

The decree of the trial court is therefore affirmed.

AFFIRMED.


MR. CHIEF JUSTICE MOORE, MR. JUSTICE BURNETT and MR. JUSTICE BEAN concur.